### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| **VIRGINIA DEANNE WALSH,** | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| *v.* | ) |
| | ) |
| **GREATER RICHMOND** | ) |
| **ASSOCIATION FOR RETARDED** | ) |
| **CITIZENS** | )   **Civil Action No.**  3:18cv292 |
| | ) |
| **JOHN WALKER,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **CHARLES D. STORY, III,** | ) |
| | |
| *Defendants.* | |

### COMPLAINT
### (Jury Trial Requested)

Comes now the Plaintiff, Virginia DeAnne Walsh, by counsel, and complains of Greater Richmond ARC, a Virginia non-stock corporation, John Walker and Charles D. Story, III, as follows:

### Nature of Claims

1.      This Complaint arises out of Defendants' - Greater Richmond ARC, John Walker and Charles D. Story, III - termination of Plaintiff, Virginia DeAnne Walsh, after she informed Defendants that her child was suffering from a serious medical condition and disability, and after she requested medical leave. This Complaint arises out of that termination and asserts claims pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (hereinafter the

"ADA"), and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. (hereinafter the "FMLA").

2.      Plaintiff seeks declaratory judgment, injunctive relief, back pay, benefits, liquidated damages, front pay and/or reinstatement, compensatory and punitive damages for ADA and FMLA violations, and reasonable attorneys' fees.

**Jurisdiction and Venue**

3.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 12117(a).

4.      Plaintiff, through her counsel, filed a charge of discrimination with the Equal Employment Opportunity Commission on July 13, 2017 – less than 300 days after her unlawful termination on September 20, 2016. (Exhibit 1).

5.      On July 25, 2017, the EEOC contacted Plaintiff's counsel by telephone and requested a telephonic interview with Plaintiff. Plaintiff's counsel scheduled the telephonic interview with the EEOC for July 27, 2017 at 2:00 pm.

6.      On July 27, 2017, at 2:00 p.m. Plaintiff's counsel called the Plaintiff and the EEOC by conference call, whereupon the EEOC requested that the call be rescheduled for 4:00 pm.

7.      On July 27, 2017, at 4:00 pm Plaintiff's counsel, by conference call, connected Plaintiff with the EEOC whereupon the EEOC interviewed Plaintiff.

8.      Unbeknownst to Plaintiff or her counsel, the EEOC issued a Notice of right-to-sue and Form 161 on or about August 8, 2017, two weeks after Plaintiff's interview with the EEOC and twenty-six days after Plaintiff had filed her charge.

a.   The EEOC did not send the Notice of right-to-sue to Plaintiff's counsel, and Plaintiff's counsel never received a copy of the Notice of right-to-sue.

b.   The EEOC did not send the Notice of right-to-sue to Plaintiff either, and Plaintiff never received a Notice of right-to-sue.

c.   On April 4, 2018, during a telephone call between an EEOC investigator and Plaintiff's counsel, Plaintiff learned for the first time that a Notice of right-to-sue had been issued the preceding August.

d.   The EEOC did not investigate the allegations of Plaintiff's charge for 180 days, in violation of 42 U.S.C. § 12117; 42 U.S.C. § 2000e-5(f)(1); *Taylor v. Cardiology Clinic, Inc.*, No. 4:14-cv-00046, 2016 U.S. Dist. LEXIS 21618 at *3 (W.D. Va. Feb. 24, 2015).

e.   During a telephone call between the EEOC Director for the Richmond office and Plaintiff's counsel on April 17, 2018, Plaintiff was informed that the EEOC was looking into whether it could issue a new Notice of right-to-sue.

f.   Neither Plaintiff nor her counsel has heard anything else on the matter from the EEOC.

g.   Equitable tolling is "reserved for those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (internal quotation marks omitted).

h.   "[E]quitable tolling must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Gayle v. UPS*, 401 F.3d 222, 226 (4th Cir. 2005) (internal quotation marks omitted).

i.  In order to demonstrate entitlement to equitable tolling, a plaintiff must "present (1) extraordinary circumstances, (2) beyond [her] control or external to [her] own conduct, (3) that prevented [her] from filing on time." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (internal quotation marks omitted).

j.  "[I]t is not at all unreasonable for a layperson who has retained counsel to assume that all further matters will be handled by her attorney." *Coleman v. Talbot County Det. Ctr.*, 242 Fed. Appx. 72, 74, 2007 U.S. App. LEXIS 16685 **7 (4th Cir. July 12, 2007).

9.  Plaintiff filed her ADA claim within 27 days of learning that the EEOC had issued a Notice of right-to-sue.

10.  Plaintiff has filed her FMLA claim within two years of her unlawful termination.

11.  Venue in this Court is proper pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2) because the Defendants regularly conducts substantial business activity in Richmond, Virginia. The actions complained of took place in this judicial district; evidence and employment records relevant to the allegations are maintained in this judicial district; and Ms. Walsh would be employed in this judicial district but for the unlawful actions and practices of the Defendants.

## Parties

12.  The Plaintiff, Virginia DeAnne Walsh (hereinafter "Walsh") is a U.S. citizen and resident of Tappahanock, Virginia. At all times relevant to the matters alleged herein, Walsh was an eligible employee within the meaning of the ADA pursuant to 42 U.S.C. § 12111(4). At all times relevant to this Complaint, Walsh has been a caretaker for a person with a disability within the meaning of the ADA. At all times relevant to this Complaint, Walsh was eligible to take medical leave to care for her daughter pursuant to 29 U.S.C. § 2612(a)(1)(C).

13.     The Defendant, Greater Richmond Association for Retarded Citizens (hereinafter referred to as "Defendant ARC") is a Virginia non-stock corporation that has its headquarters in Richmond, Virginia. At all times pertinent hereto, Defendant ARC was, is, and has been an employer engaged in an industry affecting commerce with more than 50 employees for each working day in each of twenty or more calendar weeks in each relevant calendar year. Defendant ARC is an "employer" under 42 U.S.C. § 12111(5)(A) and 29 U.S.C. § 2611(4)(A) and is subject to the provisions of the ADA and the FMLA.

14.     The Defendant John Walker ("Defendant Walker") is a U.S. citizen and resident of the Commonwealth of Virginia. Defendant Walker is an "employer" under 29 U.S.C. § 2611(4)(A) and is subject to the provisions of the FMLA. Defendant Walker became the CEO of Defendant ARC in 2015, while Walsh was employed with ARC.

15.     The Defendant Charles D. Story, III ("Defendant Story") is a U.S. citizen and resident of the Commonwealth of Virginia. Defendant Story is an "employer" under 29 U.S.C. § 2611(4)(A) and is subject to the provisions of the FMLA. Defendant Story has been the Vice President for HR of ARC throughout Walsh's employment with ARC.

16.     At all relevant times, Defendant ARC's agents and employees were acting during the course and within the scope of their employment or agency and with the knowledge and consent of the Defendant ARC.

17.     During all times pertinent to this Complaint, the Defendants controlled the terms and conditions of Walsh's employment.

**Factual Allegations**

18.     Walsh began working for Defendants as a Consumer Support Specialist in April of 2012.

19.     Over the years, Walsh received positive performance evaluations, promotions and increases to her annual salary. She loved working at Defendant ARC. Her superiors were uniformly pleased with her performance.

20.     In July of 2013, Walsh was promoted to Director of Consumer Support Services.

21.     In October of 2015, Walsh got married and became the step mother of a five-year-old girl (hereinafter "M").

22.     In the summer of 2015, Walsh and her soon-to-be husband discovered that M had been the victim of sexual abuse.

23.     Walsh and her husband immediately sought medical and psychological treatment for M.

24.     M was diagnosed and treated for posttraumatic stress disorder, a disability that affects the major life activities, sleeping, thinking and social interaction, among others.

25.     In July of 2015, Walsh explained the details of this situation – M's sexual abuse and the medical and psychological consequences and resulting disability – to Defendant ARC's CEO, Defendant John Walker, and ARC's Vice President, Demis Stewart. Both managers seemed very supportive and understanding and expressed to Walsh that they understood the emotional impact such a traumatic event would have on M and her family.

26.     It became necessary for Walsh to take intermittent leave from work to care for M and allow M to receive the medical treatment necessary to address her posttraumatic stress disorder.

27.     Walsh kept her supervisors, Defendants Walker and Story, informed of M's treatment and the fact that Walsh would need to leave early approximately once a week.

28.     M was required to attend weekly treatment sessions with a therapist through the Child Advocacy Center between August 17, 2015 and September 26, 2016.

29.     These treatment sessions caused Walsh to be absent from work for a few hours on the day of the treatment.

30.     Between August 17, 2015 and September 26, 2016, M and Walsh attended 37 therapy sessions. Most of these therapy sessions were scheduled at 4 o'clock in the afternoon.

31.     M had therapy sessions which Walsh attended on the following afternoons:

   a.   August 17, 24 and 31, 2015;

   b.   September 14, 28 and 30, 2015;

   c.   October 5 and 19, 2015;

   d.   November 2, 11 and 30, 2015;

   e.   December 7, 14 and 17, 2015;

   f.   January 7 and 14, 2016;

   g.   February 4, 11, 18 and 25, 2016;

   h.   March 7 and 22, 2016;

   i.   April 4, 11, 18 and 25, 2016;

   j.   May 2, 9 and 16, 2016;

      k.  June 6, 13, 20 and 27, 2016;

      l.  July 5 and 25, 2016;

      m.  August 2, 15 and 29, 2016;

      n.  September 12 and 26, 2016.

32.     In July of 2016, Defendants suddenly put Walsh on a Performance Improvement Plan. However, during a follow-up meeting on August 26, 2016, Story concluded, "Progress has been noteworthy and steady across all objectives. I found our meeting this past Tuesday to be both productive and enjoyable. You are on a roll let's [sic] keep building on successes each day." Story remarked that "Communications have improved," and he also noted that Walsh had improved in the areas of time management and what Story termed "Emergency Respite processes."

33.     Six days before the final scheduled therapy session, on September 20, 2016, Defendants Walker and Story met with Walsh and terminated her.

34.     Defendant Story stated during this brief meeting, "This doesn't have anything to do with you taking time off," or words to that effect.  Defendant Walker agreed by stating "that is correct."

35.     Defendants told Walsh that ARC had decided to make a change and that her leadership skills were not sufficient.

36.     Defendants also told Walsh, "It is acknowledged that you have worked hard and demonstrated an admirable level of commitment to ARC."

37.     Defendants terminated Walsh for pretextual reasons.

38.     Defendants terminated Walsh because of Walsh's role as caretaker of her disabled

daughter and because she had been taking intermittent FMLA leave.

## COUNT ONE
### ADA – 42 U.S.C. 12101 *et seq.*
### Disparate Treatment
### (against Defendant ARC only)

39.     Walsh incorporates and re-alleges the allegations contained within the preceding paragraphs of this Complaint as though fully set forth herein.

40.     All of the acts of the Defendant ARC's employees alleged herein were undertaken in the course and within the scope of their employment and on behalf of the Defendant ARC.

41.     In the summer of 2015 Walsh and her then fiancé discovered that his daughter M had been the victim of sexual assault, causing post-traumatic stress disorder and other health issues, which meet the legal definition of disability under the Americans with Disabilities Act.

42.     Walsh has an underage stepdaughter who was suffering from a serious medical condition that had a significant impact on major life activities.

43.     Walsh immediately told Defendants about her daughter's disability and medical needs.

44.     Walsh also told her supervisors that, due to her daughter's disability, she would need to leave work early to attend therapy sessions with her daughter.

45.     During her employment with Defendant ARC, Walsh's job performance met or exceeded Defendant ARC's legitimate expectations.

46.     Walsh was a qualified individual associated with someone with a disability, as those terms are defined by the Americans with Disabilities Act.

9

47. Walsh's daughter was suffering from a serious medical condition that had a significant impact on major life activities.

48. Walsh possessed the requisite skills to do her job.

49. Walsh continued to be capable of doing the essential functions of her job, as she had been throughout her employment.

50. Walsh was required to transport her daughter to weekly treatment sessions with a therapist through the Child Advocacy Center between August 17, 2015 and September 26, 2016.

51. These treatment sessions caused Walsh to be absent from work for a few hours on the day of the treatment.

52. Six days before the final scheduled therapy session, on September 20, 2016, Defendants Walker and Story met with Walsh and terminated her.

53. Defendant Story stated during this brief meeting, "This doesn't have anything to do with you taking time off," or words to that effect. Defendant Walker agreed by stating "that is correct."

54. Defendants told Walsh that Defendant ARC had decided to make a change and that her leadership skills were not sufficient.

55. Defendants also told Walsh, "It is acknowledged that you have worked hard and demonstrated an admirable level of commitment to ARC."

56. Defendants terminated Walsh for pretextual reasons.

57. Defendants terminated Walsh because of Walsh's role as caretaker of her disabled daughter.

10

58.     Defendant ARC's actions were done in willful violation of Walsh's rights under the Americans with Disabilities Act.

59.     Defendant ARC acted with malice and/or with reckless disregard for Walsh's rights under the Americans with Disabilities Act when it terminated Walsh and discriminated against her because of her association with her daughter who has a disability.

60.     Walsh is entitled to punitive damages.

61.     Defendant ARC terminated Walsh's employment because of her association with her daughter who has a disability and thereby violated her right to equal employment opportunity as protected by the ADA.

62.     Walsh has been damaged by Defendant ARC's actions, including, but not limited to loss of employment, loss of compensation and employment related benefits.

63.     As a direct and proximate result of Defendant ARC's actions, Walsh has suffered, continues to suffer, and will in the future suffer injury and damages, including embarrassment, inconvenience, humiliation, severe mental anguish, pain, suffering, loss of income, litigation expense including attorneys' fees, medical expense, consequential damages and other injury.

## COUNT TWO
## FAMILY AND MEDICAL LEAVE ACT OF 1993, 29 U.S.C. §2601
### Wrongful Termination
### (against all Defendants)

64.     The plaintiff incorporates and re-alleges the allegations contained within the preceding paragraphs of this Complaint as though fully set forth herein.

65.     All of the acts of Defendants and ARC's employees alleged herein were undertaken in the course of, and within the scope of, their employment on behalf of Defendants.

11

66.     Walsh had a daughter with a serious health condition within the meaning of the FMLA, and/or its implementing regulations, of which Defendants were well aware.  Walsh's daughter's serious health condition and Walsh's need for absences in relation to her daughter's health condition were protected under the FMLA.

67.     Between August 17, 2015 and September 26, 2016, Walsh took intermittent leave to which she was entitled under the FMLA as a result of her daughter's serious health condition.

68.     Defendants were upset over the time Walsh had to take off work due to her under-age daughter's serious health condition.

69.     Defendants used Walsh's FMLA qualifying leave as a negative factor in employment decisions relating to Walsh, and, thereby, interfered with Walsh's rights under the FMLA in violation of 29 U.S.C. 2615(a)(1).

70.     Defendants discriminated and retaliated against Walsh for using FMLA qualifying leave in violation of 29 U.S.C. 2615(a)(2) and 29 U.S.C. 2615(b).

71.     Defendants terminated Walsh's employment with Defendants on September 20, 2016, in violation of the FMLA.  29 U.S.C. 2615(b).

72.     Defendants' conduct interfered with, restrained, and/or denied the exercise of attempt to exercise Walsh's rights under the FMLA in violation of 29 U.S.C. 2615(a) and (b).

73.     Defendants' conduct complained of herein was willful and without legal justification or excuse.

74.     As a direct and proximate result of the acts and practices of Defendants and Defendant ARC's agents, and employees set forth herein, Walsh has suffered and continues to

suffer injury and damage, including loss or denial of employment, past and future loss, and denial of income, including wages, healthcare benefits, and other employment benefits.

WHEREFORE, Plaintiff Virginia DeAnne Walsh demands that judgment be entered in her favor and against the Defendants on the above-stated counts, and on each of them as described above, and that in addition this Court issue an Order:

(i)      Declaring that the acts and practices complained of herein are in violation of the Plaintiff's rights as secured by the Americans with Disabilities Act, 42 U.S.C. §12101 et seq., and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq.;

(ii)     Requiring and issuing a mandatory injunction directing the Defendants ARC, John Walker and Charles D. Story, III to reinstate the Plaintiff to a position of equal duties and responsibilities as the Plaintiff would have received but for Defendants' conduct, with equal pay and benefits, retroactive to September 20, 2016, or in the alternative for an award of judgment for front pay and benefits under the ADA and the FMLA;

(iii)    Awarding Plaintiff back pay for violations of the ADA and the FMLA;

(iv)     Awarding Plaintiff front pay for violations of the ADA and the FMLA;

(v)      Awarding Plaintiff liquidated damages in an amount to be determined at trial for willful violation of the FMLA;

(vi)     Awarding Plaintiff punitive damages of $300,000.00 for willful violation of the ADA;

(vii)    Awarding Plaintiff an amount sufficient to offset any adverse tax consequences resulting from a lump sum award or an award of other relief in this action because he was required to file suit to enforce his federally protected rights;

(viii)   Awarding Plaintiff other appropriate injunctive relief;

(ix)   Awarding Plaintiff incidental and consequential damages, actual attorney's fees and costs of this action, including expert witness fees; and in addition,

(x)   Awarding Plaintiff such other and further relief as may be appropriate under the circumstances.

**TRIAL BY JURY IS REQUESTED.**


VIRGINIA DEANNE WALSH

By Counsel

_____/s/ Tim Schulte_____
Tim Schulte (VSB #41881)
Blackwell N. Shelley, Jr. (VSB #28142)
Shelley Cupp Schulte, P.C.
2020 Monument Avenue
Richmond VA 23220
(804) 644-9700
(804278-9634 [fax]
schulte@scs-work.com
shelley@scs-work.com

*Counsel for Plaintiff*

14